# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:19-cv-00348-MR
### [CRIMINAL CASE NO. 1:17-cr-00036-MR-WCM]

| | | |
|---|---|---|
| ALAN PETER DARCY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. [Doc. 1].[1]

## I. BACKGROUND

In March 2017, a grand jury in the Western District of North Carolina indicted Petitioner Alan Peter Darcy, charging him with wire fraud and aiding and abetting the same, in violation of 18 U.S.C. §§ 1343 and 2 (Count One). [CR Doc. 1 at 4: Indictment].

On April 26, 2017, Petitioner entered into a written Plea Agreement with the Government and pleaded guilty to Count One. [CR Doc. 10 at 1:

_____

[1] Citations to the record herein that contain the relevant document number referenced preceded by the letters "CR" denotes that the document is listed on the docket in the criminal case file number 1:17-cr-00036-MR-WCM.

Plea Agreement]. As part of the Plea Agreement, the parties jointly recommended to the Court a base offense level of seven under the United States Sentencing Guidelines; a 14-level enhancement for a loss between $550,000 and $1.5 million; and a two-level enhancement for substantial hardship caused by the loss. [Id. at 2]. The parties agreed they would "not seek any other enhancements or reductions to the offense level." [Id.]. Petitioner affirmed that he understood the Court "is not bound by recommendations or agreements by the United States [Attorney's Office]." [Id. at 5]. Petitioner agreed to pay full restitution, to disclose all "current and projected assets," and to truthfully complete and update a financial disclosure statement under penalty of perjury. [Id. at 3].

The Plea Agreement states that Petitioner discussed with his attorney his "rights pursuant to 18 U.S.C. § 3742, 28 U.S.C. § 2255, and similar authorities to contest a conviction and/or sentence through an appeal or post-conviction [action] after entering into a plea agreement." [Id. at 5]. In exchange for the concessions made by the Government in the Plea Agreement, Petitioner expressly agreed to waive all such rights to appeal or collaterally attack his conviction "except for claims of: (1) ineffective assistance of counsel or (2) prosecutorial misconduct." [Id.].

The Magistrate Judge conducted the plea colloquy required by Federal Rule of Criminal Procedure Rule 11 and found that Petitioner's guilty plea was knowingly and voluntarily made. [CR Doc. 17 at 9: Acceptance and Entry of Guilty Plea]. At the hearing, Petitioner was represented by counsel and placed under oath. [Id.]. During the hearing, the Magistrate Judge read to Petitioner the elements of the offense including the element that the offense was committed "knowingly, willfully, intentionally, and unlawfully." [Id. at 3]. Petitioner was informed of the minimum and maximum sentences he might receive. [Id.]. Petitioner acknowledged that he understood that the Probation Office would "prepare a presentence report which contains Guidelines calculations and that both [he] and the Government will have an opportunity to object to any alleged deficiencies in the report." [Id. at 6]. Petitioner affirmed his guilt and his acceptance of the terms of the Plea Agreement and confirmed he had had ample time to discuss any potential defenses with his attorney and that he was satisfied with his attorney's services. [Id. at 6–8].

The probation officer prepared a Presentence Report (PSR) in advance of sentencing with a recommendation of a total offense level of 25. [CR Doc. 25 at 9: PSR]. In accordance with the Plea Agreement, the probation officer recommended a base offense level of seven, a 14-level increase for the amount of loss, and a two-level increase for causing

3

substantial hardship to at least one of the victims. [Id.]. The probation officer did not include an adjustment for acceptance of responsibility and included a two-level enhancement for obstruction of justice because Petitioner had "provided materially false information to the probation officer" by attempting to conceal his assets and by providing false financial information. [Id.]. With a criminal history category of III, Petitioner's advisory guideline range was 70 to 87 months' imprisonment. [Id. at 21].

The Government submitted a sentencing memorandum in which it noted the Probation Office's recommendation for a two-level enhancement for obstruction of justice. [CR Doc. 29]. The Government also stated that while Petitioner was "not initially forthcoming about his financial situation and [had] failed to provide complete information about his business bank accounts and the trusts that purportedly hold his assets" it appeared that his "lack of candor was not intended to hide some vast fortune and he has agreed to forfeit his interest in one of the trusts." [Id. at 6]. Through counsel, Petitioner objected to the PSR, specifically objecting to the two-level enhancement for obstruction of justice. [CR Doc. 23 at 1]. Petitioner stated, "the information he provided to the probation office was complete and truthful" other than "slight errors." [Id.]. Petitioner argued that the Court should sustain his objections so that the guideline range in this case would

4

be 41 to 51 months' imprisonment. [Id. at 4]. The final PSR included the guideline calculations both with and without the obstruction of justice enhancement and acceptance of responsibility reduction. [CR Doc. 25 at 9, 21].

At the sentencing hearing, Petitioner reaffirmed that the answers that he had given at the plea hearing were true and correct and that he would answer the questions the same way if the Court were to ask them again. [CR Doc. 41 at 4–7]. Asked if it was still his intent to plead guilty in this matter, Petitioner replied, "Yes, sir." [Id. at 6]. The Court confirmed the findings of the Magistrate Judge during the plea colloquy and reaffirmed the Magistrate Judge's acceptance of Petitioner's guilty plea. [Id. at 7–8].

The Court then reviewed the PSR and asked both parties about the enhancement for obstruction of justice and the reduction for acceptance of responsibility. [Id. at 8–12]. Although Petitioner's attorney advocated for a reduction for acceptance of responsibility and against the enhancement for obstruction of justice, the Court concluded "that in responding to what [the Court] see[s] as various straightforward questions regarding the assets of the defendant that the defendant simply got too cute by half in trying to skirt around the information that was sought." [Id. at 12]. The Court therefore found that the calculation of the offense level in the presentence report that

5

included the two-level enhancement for obstruction of justice and excluded the reduction for acceptance of responsibility was correct. [Id.].

One of the victims in this case, Kathleen Haggarty, addressed the Court at the sentencing hearing. [Id. at 16]. Ms. Haggarty informed the Court about the financial impact of the crime on herself and her family. After she spoke, the Court asked Petitioner's attorney for the appropriate sentence in this case. Petitioner's attorney argued for a sentence at the low end of the guidelines, citing Petitioner's age and health conditions, including "cardiac issues, gastrointestinal issues, eye problems, lung problems," a stroke, bursitis issues, and his need for a CPAP machine. [Id. at 19]. The Government argued for a guidelines sentence, citing its sentencing memorandum. [Id. at 22]. Petitioner allocuted and stated, "I stopped doing all this when it first came to light" and "I accept responsibility. We believed in what we are doing. We stopped doing it very simply." [Id. at 24].

The Court varied upward in imposing the sentence, citing to the seriousness of the offence based on the amount of money taken, the hardship to the victims, and to the history and characteristics of Petitioner, noting that he "has previously been convicted of almost exactly the same sort of thing" and has been involved in similar civil cases. [Id. at 28–29]. Petitioner's criminal history belied his assertion at allocution that he

discontinued the criminal activity "when it first came to light." The Court stated that this sentence was necessary to "afford adequate deterrence to criminal conduct." [Id. 29]. The Court sentenced Petitioner to 108 months' imprisonment and ordered him to pay $740,028.43 in restitution. [CR Doc. 33: Judgment]. The Fourth Circuit dismissed Petitioner's appeal as barred by the appeal waiver in the Plea Agreement on September 18, 2018. [CR Doc. 44]. On December 13, 2019, Petitioner filed his timely § 2255 motion before this Court asserting numerous claims of ineffective assistance of trial counsel, as well as ineffective assistance of appellate counsel, government misconduct, and other errors. [Doc. 1]. The Government filed its response on March 20, 2020. [Doc. 9].

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C. § 2255(b). After examining the record in this

matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

Petitioner presents six claims in his motion: (1)  ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) prosecutorial misconduct; (4) the "government, *de facto*, abrogated the plea agreement" and ineffective assistance of counsel for not filing a motion to set aside the plea agreement; (5) violation of his Fourth Amendment rights and ineffective assistance of counsel for not filing a motion to suppress or dismiss based on this violation; and, (6) violation of his rights because the victim who spoke at sentencing was not cross-examined.

### A.  Ineffective Assistance of Trial Counsel (Claim 1)

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. amend. VI. To show ineffective assistance of counsel, a petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687–88 (1984). In making this showing, there is "a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

In order to establish prejudice, a petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 669. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In the context of a claim of ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

In considering the prejudice prong, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). If a petitioner fails to

9

conclusively demonstrate prejudice, the Court need not consider the performance prong. United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

### 1.   Claims of Pre-Plea Ineffective Assistance

Regarding claims of ineffective assistance of counsel that arose before Petitioner pled, Petitioner argues that his counsel was ineffective because she failed to (1) properly advise him in connection with the proposed plea; (2) file a motion to dismiss based on Fourth Amendment violations; (3) file a motion to dismiss for lack of criminal intent; (4) review discovery with him; and (5) argue retaliatory prosecution.

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" Padilla v. Kentucky, 559 U.S. 356, 364 (2010) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). A guilty plea knowingly and voluntarily made "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294–96 (4th Cir. 1992). "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010).

10

In evaluating claims under § 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (quotations omitted).

   *a.   Advising Defendant to Plead Guilty*

Petitioner first contends that his trial attorney failed to properly advise him in connection with his guilty plea. Petitioner argues that (1) he received bad advice because his counsel should not have advised him to plead guilty because Petitioner informed his counsel that he did not commit a crime and because of his age and health, and (2) that his counsel made a bad prediction by suggesting that he would "receive a very light active sentence, if any at all" and his plea was "a misunderstanding due to misinformation from his lawyer about the sentencing that he would likely receive." [Doc. 1-1 at 1–2].

Petitioner's own statements at his Rule 11 colloquy made under oath and affirmed in front of this Court belie Petitioner's argument. During the plea hearing Petitioner admitted guilt and testified under oath that he understood the elements of the crime; he understood that he could be sentenced up to the statutory maximum of 20 years' imprisonment; he understood how the guidelines may apply to him; and that he understood the Court was not bound to sentence him within the guideline range. [CR Doc. 42 at 3, 15–18]. These statements contradict Petitioner's argument that he told his attorney that he was not guilty. As to the argument that counsel was ineffective in advising Petitioner to plead in light of his age and health, such factors are not relevant as to whether Petitioner committed the crime and would not absolve him of guilt. To the extent these may be relevant factors for *sentencing* his attorney addressed this in other ways as discussed below. Petitioner has not alleged any "extraordinary circumstances" that would justify disregarding Petitioner's sworn statements at the Rule 11 hearing and sentencing that he was, in fact, guilty. See Lemaster, 403 F.3d at 221. This claim, therefore, is without merit.

Even assuming that Petitioner's attorney did, in fact, advise Petitioner to expect a short sentence, Petitioner has still not alleged facts sufficient to support his assertion that his attorney provided pre-plea ineffective

representation. As the Supreme Court has stated, "uncertainty is inherent in predicting court decisions." McMann v. Richardson, 397 U.S. 759, 771 (1970). Accordingly, an erroneous prediction by counsel of what a court will do or what sentence a defendant is likely to receive does not establish constitutionally ineffective assistance. See Spiller v. United States, 855 F.3d 751, 757 (7th Cir. 2017); Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012); cf. Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984) (holding that an attorney's "grossly misinform[ing]" a defendant "about parole possibilities" did not establish constitutionally ineffective assistance of counsel requiring the district court to permit him to withdraw his guilty plea).

### b. Violating Petitioner's Fourth Amendment Rights (Claim 5) and Failing to Move to Suppress or Dismiss Based on the Violation

Petitioner contends that his counsel was ineffective in failing to file a motion to suppress or dismiss based on evidence obtained from Petitioner's bank records, arguing that the Government violated his Fourth Amendment rights in obtaining those records. In order to establish that counsel was ineffective for failing to move to dismiss or suppress the evidence Petitioner must first establish that he had a meritorious Fourth Amendment claim; therefore, the Court will address the Fourth Amendment issue first. Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S. Ct. 2574, 2586–87 (1986).

13

There is generally is "no Fourth Amendment interest" in a person's bank records because the "Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities." United States v. Miller, 425 U.S. 435, 443–44 (1976). This applies to the information Petitioner disclosed to his bank, which the bank then provided to the Government. Petitioner argues that Miller should not apply to banking information citing to Carpenter v. United States, 138 S. Ct. 2206 (2018). Petitioner's reliance on Carpenter is misplaced. Carpenter did not overrule Miller but merely limited Miller in the context of modern cell phone technology. Carpenter, 138 S. Ct. at 2217 (declining to extend Miller because of "the unique nature of cell phone location records"). Other than Petitioner's naked assertion that he believes "that his private records had been illegally obtained," he offers no evidence of illegality on the part of the Government. This is not enough to establish a violation of Petitioner's Fourth Amendment rights. United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Petitioner's Fourth Amendment violation claim is, therefore, without merit.

Turning to the claim of ineffective assistance of counsel for not filing a motion to suppress, Petitioner's guilty plea "by itself" forecloses any

14

challenge to alleged misconduct by his attorney before and unrelated to the voluntariness of his guilty plea. As stated above, the Rule 11 colloquy and the confirmation at the sentencing hearing establish that Petitioner's plea was knowing and voluntary. Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000); Fields, 956 F.2d at 1294–96. Even if Petitioner's guilty plea did not foreclose any challenge to counsel's failure to file a motion to suppress or dismiss, he has not alleged facts that would tend to show that "no competent attorney would think a motion to suppress would have failed." Premo v. Moore, 562 U.S. 115, 124 (2011). Petitioner's attorney could well have examined the information available to her and made a reasonable judgment that a motion to suppress was not worth pursuing. Morrison, 477 U.S. at 382. Considering the fact that Petitioner's Fourth Amendment argument is without merit, such assessment by counsel would be fully warranted. Petitioner's claim for infective assistance of counsel on this issue is, therefore, denied.

c.    *Failing to File a Motion to Dismiss for Lack of Criminal Intent*

Petitioner alleges that his trial counsel was ineffective in not filing a motion to dismiss the charges against him for lack of criminal intent. At the time of Petitioner's plea it was clearly explained to him that criminal intent is an element of the crime charged. Petitioner affirmed that he understood the elements of the crime and that he was guilty of that crime. [CR Doc. 42 at

15

15]. As such, he has confessed under oath to having the requisite criminal intent. Petitioner's claim is thereby waived by his guilty plea and statements at the Rule 11 colloquy. See Lemaster, 403 F.3d at 221.

Even if the claim was not waived by his guilty plea, Petitioner has not shown that his counsel was ineffective in not moving to dismiss. Other than his self-serving statements that the case was "civil rather than criminal," Petitioner offers no evidence or argument in support of this claim. His admission under oath that he acted with criminal intent is unrebutted Therefore, he can show neither deficient performance nor prejudice from counsel's alleged failure to move to dismiss on this basis. Morrison, 477 U.S. at 382.

### d.   Failing to Review Discovery with Petitioner

Next, Petitioner claims that counsel did not review discovery with him. Petitioner does not articulate what discovery his counsel failed to review with him or what difference such discovery would have made, but generally states "neither the petitioner nor his undersigned [habeas] counsel have seen the discovery." [Doc. 17 at 23].

General allegations that counsel failed to fully review or provide discovery are generally insufficient to support a finding of error. Dyess, 730 F.3d at 359–60. During the Rule 11 proceedings Petitioner asserted that he

had reviewed the charges and the Plea Agreement with counsel, admitted that the government would be able to prove the elements of the offense, agreed with the factual basis set forth in the Plea Agreement, and stated that he was satisfied with counsel's representation. [CR Doc. 42 at 15, 20, 25, 27, 31]. These statements are presumptively correct and are not overcome by Petitioner's self-serving and conclusory statements that counsel failed to adequately review discovery with him before the plea hearing. See Blackledge, 431 U.S. at 74. There is no evidence that Petitioner's counsel was objectively unreasonable with respect to discovery or discussing the nature of the charges.[2] Petitioner has not established prejudice or how any specific discovery might have altered his calculation about whether to plead guilty, therefore, this claim is dismissed.

e.  *Failing to Argue Prosecutorial Misconduct and Prosecutorial Misconduct (Claim 3)*

Petitioner alleges that the Government entrapped him and committed prosecutorial misconduct (Claim 3). [Doc 1-1 at 16]. He also alleges that his counsel was deficient in failing to secure records from earlier investigations of Petitioner and in failing to argue that the charge was based on government

---

[2] To the extent that Petitioner suggests that prejudice must be presumed in failing to review discovery this claim is also without merit. See United States v. Cronic, 466 U.S. 648, 659–60 (1984) (listing three presumption cases which does not include failing to review discovery).

misconduct or retaliatory prosecution. [Id. at 10–14]. In support of this allegation, Petitioner states that "upon information and belief" he was "targeted" by the Government because of "retaliation and government animus toward [him] resulting from earlier federal and state investigations." [Id. at 14–16]. Petitioner states that "from 1973 to the present [he] has been the subject of many state and federal governmental actions" including an IRS investigation that allegedly lasted for nearly a year, but which did not result in an indictment. [Id. at 13–14]. Petitioner summarily concluded that grand jury testimony or records of this investigation and others "would have assisted in an effort to show prosecutorial misconduct in connection with this investigation and the indictment resulting from it." [Id. at 14].

In order to establish ineffective assistance of counsel for not investigating or filing a motion to dismiss based on alleged prosecutorial misconduct, a petitioner must first sufficiently demonstrate government misconduct. United States v. Richardson, 724 F. App'x 193, 196 (4th Cir. 2018) ("[B]ecause he does not establish prosecutorial vindictiveness, he cannot show that counsel was ineffective for failing to investigate.").

When considering a claim of prosecutorial misconduct, the Court must determine "whether the conduct 'so infected the [proceedings] with unfairness as to make the resulting [conviction and sentence] a denial of due

process.'" United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (quoting United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995)). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." Id.; see United States v. Caro, 597 F.3d 608, 624–25 (4th Cir. 2010).

Vindictive or retaliatory prosecution is one form of prosecutorial misconduct. Prosecution of a person "brought with a vindictive motive, penalizing those who choose to exercise their constitutional rights, [is] patently unconstitutional." North Carolina v. Pearce, 395 U.S. 711, 724 (1969) (quotations omitted). In order to make out a claim for vindictive prosecution the defendant must make an objective showing that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001).

Petitioner has not identified any objective evidence of misconduct or improper motive but rather makes a conclusory statement "upon information and belief that these charges are the result of government retaliation and

government animus." [See Doc. 1-1 at 14]. Petitioner has not set forth any evidence that the prosecutor had a personal stake in the outcome of his case or that the case related to the grand jury investigation of the Petitioner from years earlier in the Western District of North Carolina or to any state court cases.[3] Petitioner's conclusory, unsupported claims of prosecutorial misconduct and his personal belief that this case is "civil not criminal" is insufficient to establish any prosecutorial animus or wrongdoing. A motion to dismiss based on retaliatory prosecution or other prosecutorial misconduct would have been frivolous. Therefore, Petitioner's counsel was not ineffective for failing to file such a motion. See Richardson, 724 F. App'x at 196. The claim of governmental or prosecutorial misconduct must, therefore, be dismissed.

## 2. Failing to Challenge the Plea Agreement and Abrogation of the Plea Agreement by the Government (Claim 4)

Petitioner next argues that the Government "*de facto*, abrogated the plea agreement" and that his counsel was ineffective in failing to raise the issue. [Doc. 1-1 at 2, 18]. The Government argues that it did not violate the Plea Agreement because it merely provided the Court with the information

_____

[3] Petitioner does not explain how the previous state court cases are related to the allegation of prosecutorial misconduct in this case. "The fact that a federal prosecution occurred after an unfavorable result in a state court does not, in and of itself, demonstrate vindictiveness on the part of the federal prosecutor." United States v. Spears, 159 F.3d 1081, 1087 (7th Cir. 1998).

required by the Agreement and argued for a sentence within the guideline range. [Doc. 9 at 21–22].

Petitioner and the Government entered into a Plea Agreement in which both parties agreed they would "not seek any other enhancements or reductions to the offense level" and that Petitioner would pay full restitution and truthfully complete and update a financial disclosure statement under penalty of perjury. [CR Doc. 10 at 2–3]. As discussed above, the Probation Office included a two-point enhancement for obstruction of justice in the PSR after Petitioner "provided materially false information to the probation officer." [CR Doc. 22 at 8–9]. The Government responded in its Sentencing Memorandum that "[p]ursuant to paragraph 7(g) of the Plea Agreement, the United States is advising the court herein of all facts pertinent to" Petitioner's sentencing. [CR Doc. 29 at 2].

The Fourth Circuit has held "[t]he government has a 'duty to furnish complete and accurate information at sentencing,'" and has "expressed doubt as to whether a plea agreement may abridge that duty." United States v. Edgell, 914 F.3d 281, 287 (4th Cir. 2019) (quoting United States v. Crisp, 817 F.2d 256, 259 (4th Cir. 1987)). Consistent with that requirement, the Plea Agreement included the provision that the Government "will inform the Court and the probation office of all facts pertinent to the sentencing process

and will present any evidence requested by the Court." [CR Doc. 10 at 2]. The Government did not "seek" the obstruction of justice enhancement either at sentencing or in their sentencing memorandum but informed the Court about the facts surrounding the Probation Office's recommendation for the enhancement and the law in reference to the enhancement. The Government did not breach the plea agreement by informing the Court about Petitioner's "lack of candor towards the Probation Office and the Financial Litigation Unit of the United States Attorney's Office." [CR Doc. 29 at 2].[4]

It was the Probation Office, not the Government, that advocated for the enhancements to the Offense Level. The Probation Office is an agency of the Court, not the U.S. Attorney's Office. United States v. Myers, 702 F. App'x 129, 130-31 (4th Cir. 2017) ("[T]he probation officer is considered 'a neutral, information-gathering agent of the court, not an agent of the prosecution.'") (quoting United States v. Johnson, 935 F.2d 47, 49-50 (4th Cir. 1991)). The language used in the Plea Agreement indicated that the Court was not bound by the Agreement and that the U.S. Attorney's Office would provide information to the Court and the Probation Office. The Probation Office did not violate the Plea Agreement when it provided

---

[4] Furthermore, nothing in the Plea Agreement precluded the Government from seeking an obstruction of justice enhancement based on Petitioner's post-plea conduct.

information regarding the obstruction of justice enhancement as it was not bound by the U.S. Attorney's Office's agreements.[5]

As there was no breach, Petitioner's attorney was not ineffective for failing to raise the issue. Further, Petitioner cannot show that he was prejudiced. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("[T]his Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

### 3. Failing to Properly Advise the Court of Petitioner's Health

Petitioner next asserts a claim for ineffective assistance of counsel alleging that his counsel failed to properly advise the Court regarding Petitioner's medical conditions. [Doc.1-1 at 3]. Petitioner argues his counsel should have provided the Court with sufficient evidence regarding his health conditions so that the Court would understand that the Petitioner's "age and medical condition [would make] any lengthy sentence . . . the equivalent of a life sentence for him." [Id. at 5].

The Court was well informed of Petitioner's health through the information in the PSR, amendments to the PSR, and in arguments by

---

[5] The Government also argues that, alternatively, even if it violated the Plea Agreement, its conduct was justified because Petitioner breached the Agreement by failing to provide complete and truthful financial information. [Doc. 9 at 23]. Because the Court concludes that the Government did not breach the Agreement the Court does not reach the issue of whether Petitioner breached it.

Case 1:19-cv-00348-MR   Document 25   Filed 01/11/21   Page 23 of 34

counsel at sentencing. The PSR appraised the Court of the severity of the conditions by including information about Petitioner's "three heart attacks in the past eight years" resulting in having a "pace maker placed in June 2017;" problems with his eyes; ulcers; and the medications that he takes, including Oxycodone. [CR Doc. 25 at 15]. A supplement to the PSR contained information that the Petitioner "suffers macular degeneration in both of his eyes," and "has had a series of falls relating to four TIA's, dizziness, headaches and slurred speech." [CR Doc. 30]. At sentencing, Petitioner's counsel indicated that "[b]ecause of his age, he's had a number of issues regarding his health," including "cardiac issues, gastrointestinal issues, eye problems, lung problems," a stroke, and "bursitis issues." [CR Doc 41 at 19]. She also indicated the need for self-surrender after Petitioner had cataract surgery. [Id. at 21].

The Court was made sufficiently aware of Petitioner's health conditions and sentenced Petitioner "fully cognizant of [his] age," indicating that if Petitioner "were a younger man [the Court] probably would have imposed a longer judgment." [CR Doc. 41 at 29]. There is no indication of any prejudice to Petitioner or that the Court would have imposed a different sentence with more information about his medical conditions. Royal, 188 F.3d at 249 (holding there must be a "reasonable probability" the petitioner's sentence

"would have been more lenient had counsel advanced additional mitigating evidence on his behalf").

### 4. Failing to File a Sentencing Memorandum

Petitioner next contends that his attorney was constitutionally deficient in failing to file a sentencing memorandum. This claim is conclusory and without merit. First, Petitioner's attorney did file a memorandum objecting to the PSR and specifically advocating for a reduction for acceptance of responsibility and against the enhancement for obstruction of justice. [CR Doc. 24]. Though such memorandum did not include arguments relating to Petitioner's previous conviction (discussed more below) or more information about his medical conditions (discussed more above), Petitioner has not demonstrated prejudice or that counsel acted outside the bounds of professional reasonableness.

### 5. Failing to Argue "from the South Carolina" Case

Petitioner argues that his trial counsel should have contacted his South Carolina counsel and reviewed the file of his previous South Carolina conviction for two counts of Attempt to Commit Wire Fraud. [Doc. 1-1 at 5–8]. Petitioner appears to argue that had his trial counsel investigated the prior case, she would have discovered that his culpability was less than implied in

the PSR. Without anything further, Petitioner argues that this Court would have sentenced him differently as a result.

Petitioner does not argue that he did not commit the South Carolina offenses but only that had counsel investigated the offenses that he would have been subject to a lesser sentence. Counsel's failure to object to the criminal history in the PSR is not ineffective assistance because there is no evidence that the South Carolina charge was invalid. From Petitioner's "Petition to Enter a Plea of Guilty" from his South Carolina case, Petitioner affirmed that he understood that if he pled guilty to the offense that conviction "may impact the sentence(s) imposed for any further offense(s) that [he] commit[s]." Petition to Enter Plea of Guilty at ¶ 31, United States v. D'Arcy, (D.S.C. Oct. 30, 2010) (8:10-cr-00999-GRA), Entry Number 38. Further, Petitioner informed the Court before its acceptance of the PSR that he understood the PSR (which included the South Carolina conviction) and that he had an opportunity to review the report with his counsel. [CR Doc. 41 at 8]. There is nothing in the record of this case to indicate that Petitioner' sentence would have been any different if counsel had further investigated his South Carolina conviction. See Royal, 188 F.3d at 249.

### 6. Failing to Inform the Court Regarding Payments to Kathleen Haggarty

Petitioner contends that counsel was ineffective for failing to inform the Court about a $20,000 payment to one of the victims in the case, Kathleen Haggarty. Even if Petitioner had presented evidence that this payment existed (which he did not) this claim fails for multiple reasons. First, Petitioner does not contend that the adjustment of $20,000 in loss amount would have made it objectively reasonable for him to go to trial, so Petitioner does not establish prejudice. Second, Petitioner does not allege how this amount would have changed his sentence. The loss amount upon which his offense level was based was within the range of $550,000 to $1,500,000. The difference of $20,000 would not have changed his offense level[6] and thus would not have affected his guideline range. Furthermore, the restitution and forfeiture amounts determined by the Court are consistent with Petitioner's admission of guilt to Count One, the Plea Agreement, and the Factual Basis.[7]

---

[6] The total restitution award was $740,028.43. [CR Doc. 33 at 4]. A reduction of $20,000 in this loss amount would have remained well within the same range.

[7] To the extent that this is a challenge to the forfeiture and restitution amounts this claim is not cognizable on § 2255 review because it is a nonconstitutional claim and does not relate to Petitioner's custody. See Shephard v. United States, 735 F.3d 797, 798 (8th Cir. 2013) (holding that as petitioner was not claiming a right to be released from custody, even if counsel was ineffective with regards to restitution amount the claim could not be raised in a § 2255 petition).

Petitioner also does not allege when such $20,000 payment was made. The amount of loss is not reduced by funds returned after an offense is detected. See U.S.S.G. § 2B1.1 cmt. n.3(E); United States v. Payne, 127 F. App'x 638, 640–41 (4th Cir. 2005) (holding the loss amount should not be reduced by funds turned over after the offense had been discovered). As Petitioner has shown neither prejudice nor defective performance from counsel's failure to inform the Court about the alleged payment made to Ms. Haggarty, this claim is dismissed.

### 7. Failing to Interview Witnesses Before the Plea and Subpoena Them to Testify at Sentencing

Petitioner next argues that his trial counsel was ineffective in not interviewing certain witnesses or subpoenaing them before the sentencing hearing. The Supreme Court has repeatedly held that "'[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Wiggins v. Smith, 539 U.S. 510, 521–22 (2003) (quoting Strickland, 466 U.S. at 690–91). Complaints of ineffective assistance of counsel due to uncalled witnesses are generally disfavored because "the presentation of witness testimony is a matter of strategy and the nature of such testimony is speculative." Brown v. United

<u>States</u>, No. 3:18-cv-00125-MOC, 2018 WL 3428148, at *8 (W.D.N.C. July 16, 2018) (citing <u>Alexander v. McCotter</u>, 775 F.2d 595, 602 (5th Cir. 1985)).

Petitioner's argument that the witnesses' interviews would have helped inform him whether to plead guilty is waived by Petitioner's knowing and voluntary guilty plea. <u>See</u> <u>Fields</u>, 956 F.2d at 1294–96. To the extent that the claim is not waived as to pre-plea conduct, Petitioner fails to provide more than a conclusory allegation that the testimony would have been helpful. "[A]n allegation of inadequate investigation does not warrant *habeas* relief absent a proffer of what favorable evidence or testimony would have been produced." <u>Beaver v. Thompson</u>, 93 F.3d 1186, 1195 (4th Cir. 1996).

Petitioner's argument that the testimony would have helped at sentencing also fails. Petitioner cannot establish ineffective assistance of counsel "on the general claim that additional witnesses should have been called in mitigation." <u>Bassette v. Thompson</u>, 915 F.2d 932, 941 (4th Cir. 1990). Moreover, the three pretermitted witnesses Petitioner identifies (Kathleen Haggarty, Gene Butler, Bob Barrett) were Petitioner's victims. The argument that their testimony would have negated criminal intent at sentencing is meritless as Petitioner had already pled guilty thereby agreeing he had the requisite intent. Moreover, Ms. Haggarty gave a victim impact statement at sentencing that was quite unfavorable to Petitioner. The idea

29

that her compelled testimony would necessarily have been helpful to Petitioner is entirely speculative. Petitioner has failed to show prejudice or defective representation in not interviewing or subpoenaing the witnesses.

In sum, for the reasons stated herein, Petitioner's ineffective assistance of trial counsel claim is denied and dismissed. Petitioner's assertion of "cumulative error" is without merit. He has not shown any error by counsel, and in any event "claims of ineffective assistance of counsel are not subject to cumulative error analysis." Rattler v. United States, No. 1:16-cv-00126-MR, 2016 WL 5349466, at *8 (W.D.N.C. Sep. 23, 2016) (citing Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998)).

## B. Ineffective Assistance of Appellate Counsel (Claim 2)

Courts ordinarily find ineffective assistance for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation marks omitted); United States v. Mason, 774 F.3d 824, 828–29 (4th Cir. 2014). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). The petitioner still bears the burden to show that

there is a reasonable probability that but for counsel's failure to raise an issue on appeal, he would have prevailed. See Robbins, 528 U.S. at 285–86.

Petitioner alleges that his appellate counsel "did not contact him in any way prior to filing of the opening brief." [Doc. 1-1 at 15]. He argues that because appellate counsel "relied strictly on issues that were waived in the plea agreement" and the brief was not filed as an Anders Brief, his appeal "was totally ineffectual *ab initio*." [Id.]. He further argues that his appellate counsel should have raised the issues that he now raises. [Doc. 17 at 25]. As shown above, however, the claims Petitioner asserted regarding trial counsel and the claims of prosecutorial misconduct are without merit and could not have afforded Petitioner any relief. Furthermore, ineffective assistance of counsel claims can be "brought in a later, appropriate proceeding under §2255" even if not raised on direct appeal. Massaro v. United States, 538 U.S. 500, 509 (2003). As he cannot establish deficiency or prejudice in appellate counsel's substantive performance this claim is dismissed.[8]

---

[8] In their Sur-Reply the Government argues that Petitioner has improperly raised some of the ineffective assistance of appellate counsel claims outside of the one-year period of limitation. [Doc. 24 at 1–2]. The Court does not reach the issue of whether some of the issues are time barred because the claims fail as a matter of law.

Case 1:19-cv-00348-MR   Document 25   Filed 01/11/21   Page 31 of 34

### C. Cross-Examination of Victim at Sentencing (Claim 6)

Petitioner argues that after Kathleen Haggarty gave her victim statement at sentencing his counsel should have cross-examined her and the Court should have asked for cross-examination. Victims of a crime have "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4); see also Fed. R. Crim. P. 32(i)(4)(B) ("Before imposing sentence, the court must address any victim of crime who is present at sentencing and must permit the victim to be reasonably heard."). Petitioner cites to no authority requiring the Court to place victims under oath and subject them to cross-examination.

In sentencing, courts can consider the victim's statement and "any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010). There is no requirement that a victim giving a victim impact statement at a sentencing hearing be placed under oath. See United States v. Myers, 402 F. App'x 844, 845 (4th Cir. 2010). The Confrontation Clause, which provides defendants with the right to cross-examine witnesses against them, also does not apply

Case 1:19-cv-00348-MR   Document 25   Filed 01/11/21   Page 32 of 34

at sentencing. <u>United States v. Powell</u>, 650 F.3d 388, 392–93 (4th Cir. 2011). For these reasons this claim is without merit.

## IV. CONCLUSION

For the reasons stated herein, the Court denies and dismisses the motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336–38 (2003) (stating that in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484–85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. <u>McDaniel</u>, 529 U.S. at 484–85. As a result, the Court declines to issue a certificate of appealability.  <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# O R D E R

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: January 11, 2021

Martin Reidinger
Chief United States District Judge